UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>  Plaintiff,<br><br>  v.<br><br>Rose Village, A California General Partnership; Elaine Tam DBA Wong's Garden Chinese Cuisine; and Does 1-10,<br><br>  Defendants. | No. 2:15-cv-02299-TLN-KJN<br><br>**ORDER** |

Plaintiff Scott Johnson ("Plaintiff") brought this action against Defendants Rose Village and Elaine Tam, DBA Wong's Garden Chinese Cuisine ("Wong's Cuisine"), and Does 1-10 (collectively "Defendants") pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and California's Unruh Civil Rights Act ("Unruh Act"), California Civil Code §§ 51–53. Defendants move the Court to order Plaintiff to show cause as to whether subject matter jurisdiction exists over Plaintiff's claims, to issue sanctions against Plaintiff, and to stay discovery. (Defs.' Am. Req. to Show Cause, ECF Nos. 31 at 3 & 39 at 11.) Plaintiff opposes the motion. (Pl.'s Resp. to Order to Show Cause, ECF No. 35.) For the reasons set forth below, the Court hereby DENIES the motion to dismiss, DENIES the request for sanctions, and GRANTS the stay of discovery pending completion of a mandatory settlement conference.

//

### I. PROCEDURAL POSTURE

Plaintiff filed his complaint on November 5, 2015. (Compl., ECF No. 1.) The Complaint alleges various violations of the ADA for each noncompliant barrier that Plaintiff identified, including: barriers within the men's restroom; the entry way; and the front transaction counter. (ECF No. 1 ¶¶ 53–73). On December 14, 2015, Defendants filed an answer, and thereafter filed a request for an order to show cause as to why Plaintiff's complaint should not be dismissed as moot for lack of subject matter jurisdiction. (Defs.' Answer to Pl.'s Compl., ECF Nos. 6 & 10.) On February 12, 2016, the Court recognized Defendants' request as being equivalent to a motion to dismiss and asked Defendants to re-file their motion as such. (ECF No. 30.) That same day, Defendants essentially filed an amended request for order to show cause and asserted that they properly filed their motion based on the applicable case law regarding subject matter under the ADA. (ECF No. 31 at 1.) In response, on February 16, 2016, this Court directed Plaintiff to show cause as to why the complaint should not be dismissed based on Defendants' assertions that they had remedied all ADA violations and thus nullified Plaintiff's actual or imminent injuries. (ECF No. 34.) On March 1, 2016, Plaintiff filed a response to the order to show cause, but before the Court could address it, Defendants filed a request to respond to Plaintiff's response. (Defs.' Req. to Reply, ECF No. 36.) On March 2, 2016, Plaintiff filed an objection to Defendants' request. (Pl.'s Objections, ECF No. 37.) This Court granted Defendants' request, and on March 11, 2016, Defendants filed a response to Plaintiff's objections. (Defs.' Reply, ECF No. 39.)

### II. FACTUAL BACKGROUND

At all relevant times, Rose Village owned the property located at 201 Harding Boulevard, Roseville, California 95678 ("the property"). One of the tenants within the shopping center is Wong's Garden Chinese Cuisine restaurant, and Elaine Tam is the owner. (ECF No. 6 at 1–2.) Plaintiff is a wheel-chair bound quadriplegic and consequently a "person with a disability" pursuant to the ADA. (ECF No. 1 ¶ 1.)

The Complaint alleges that Plaintiff visited Wong's Cuisine in March and April 2015, but was unable to fully and equally access the restaurant due to a number of barriers. (ECF No. 1 ¶¶ 47–79.) During both visits, Plaintiff found the following ADA violations: the men's restroom

1  had a traditional style door knob that required a person to grasp and twist in order to open the
2  door; the toilet seat cover dispenser was over 54 inches above the floor; the mirror was higher
3  than 40 inches above the floor; and the plumbing underneath the sink was not wrapped. (ECF
4  No. 1 ¶¶ 15–22.) Additionally, Plaintiff discovered that the cashier counter was more than 36
5  inches in height and did not provide a lower section for persons in wheelchairs, (ECF No. 1 ¶¶
6  28–34), and that the first and second set of entrance doors did not comply with the ADA because
7  they had panel-style door knobs "that required tight grasping and twisting of the wrist to
8  operate," less than 48 inches separated the two doors, and "there was a front approach to the pull
9  side of a swinging entrance door at the [r]estaurant with less than 18 inches of clearance to the
10 strike side of the door" (ECF No. 1 ¶¶ 35–42).

11       Defendants allege that since being notified of the alleged infractions, repairs have been
12 executed, and on January 27, 2016, they notified Plaintiff's counsel that the restaurant was ADA
13 compliant. (ECF No. 32 ¶ 3.) In addition, Defendants asked Plaintiff if he would like to return
14 and inspect the property. (ECF No. 32 ¶ 3.) Plaintiff's counsel did not reply. (ECF No. 32 ¶ 3.)
15 On February 5, 2016, Defendants made a "FRCP 68 offer for more than statutory damages under
16 the California UNRUH Act, plus an additional amount for attorney's fees and costs." (ECF No.
17 32 ¶ 4.) Plaintiff did not accept the FRCP 68 offer, and emailed Defendants two deposition
18 notices. (ECF No. 32 ¶ 5.)

19       On February 11, 2016, Defendants emailed Plaintiff's counsel a sworn declaration by Mr.
20 Rod Thayer, a licensed contractor with OMNI Structures & Management Inc. ("OMNI").
21 (Thayer Decl., ECF No. 33 ¶ 1.) In his declaration, Mr. Thayer claims that he changed each
22 barrier Plaintiff alleged in the Complaint to comply with the 2010 ADA Code, with the exception
23 of the sink in the men's restroom and the distance between the two entrance doors because he
24 asserts that these items were already in compliance with the ADA. (ECF No. 33 ¶ 3.) Mr.
25 Thayer included photographs of each alleged barrier and his measurements to support his
26 declaration. (ECF No. 33 at 6–31.)

27       On February 26, 2016, Plaintiff's expert, attorney Anthony Goldsmith, visited Wong's
28 Cuisine in order to conduct a site inspection to confirm or dispute Defendants' alleged changes.

(ECF No. 35-2 at 1.) Mr. Goldsmith first evaluated all of the alleged ADA violations within the Complaint. (ECF No. 35-2 at 1.) According to Mr. Goldsmith's report, the Defendants addressed the following barriers: (1) all conditions in the men's restroom; (2) the front door space and front door handles; and (3) the cash register counter had a new, separate counter section 34" above the floor and 36" in width attached to the pre-existing counter. (ECF No. 35-2 at 2.) However, Mr. Goldsmith also reported additional barriers that were not alleged in Plaintiff's complaint. (ECF No. 35-2 at 3–4.) The newly discovered barriers include: (1) an inaccessible pedestrian arrival route "that would allow a person with a disability to access the facility from the public sidewalks" due to cross slopes up to 14.6%; (2) an inaccessible handicapped parking space due to its slopes of over 1:48 or up to 6.2%; and (3) non-conforming sidewalks that surround the buildings within the shopping center due to their excess slope of 1:48 or 2.08%. (ECF No. 35-2 at 3–4.) In addition, Plaintiff alleged that the remodeled cashier countertop only met the 1991 ADA Accessibility Guidelines ("ADAAG") instead of the 2010 guidelines. (ECF No. 35-2.)

Defendants allege that less than a month later Robert Stultz, a licensed general contractor with OMNI whose majority of work has been ADA related, reviewed and inspected Wong's Cuisine in order to remedy the barriers that Mr. Goldsmith identified in his report. (ECF No. 39 at 1–2.) In a sworn declaration, Mr. Stultz claims his firm removed the added section of the cashier counter and replaced the counter with a single transaction counter that is 36 inches wide and 30 ¾ inches tall. (ECF No. 39 at 5.) Additionally, OMNI re-paved the handicap parking space that Mr. Goldsmith identified as an ADA noncompliant barrier, as well as the adjoining parking space so that the slope is now less than 2%. (ECF No. 39 at 6.) Mr. Stultz prepared a bid "for the concrete work to correct the ramp that the Goldsmith report identified as having too much cross-slope, as well as the cross-slope of the walkways between the buildings." (ECF No. 39 at 3.) The bid estimates that the concrete work would take approximately 30 days to complete, and the cost to complete the project totaled $78,151.70. (ECF No. 39 at 57–60.) Additionally, Mr. Stultz claims that the businesses will have to be shut down while his firm completes the concrete work. (ECF No. 39 at 3.) Mr. Stultz alleges that the only alternative to the concrete work is to re-route disabled pedestrians through the parking lot, "which is dangerous." (ECF No.

39 at 3.)

### III. STANDARD OF LAW

A party may bring a motion to challenge a court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The challenge can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge attacks the pleadings as insufficient to invoke federal jurisdiction whereas a factual challenge contests the veracity of the jurisdictional pleadings. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack on jurisdiction, a court need not consider the allegations of the complaint as true but may look beyond the complaint to evaluate jurisdictional facts. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)); *see id.* at 1040 (applying summary judgment standard of review to district court's dismissal of action for lack of subject matter jurisdiction). "A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

### IV. ANALYSIS

Defendants are challenging Plaintiff's complaint as failing to establish federal jurisdiction in the instant request for an order to show cause. Specifically, Defendants contend that they remedied all of the alleged ADA violations within the complaint, thereby mooting Plaintiff's claims. (ECF No. 31 at 6.) Defendants also challenge some of Plaintiff's allegations within his expert report as moot due to alterations and assert that the removal of two of the barriers are not readily achievable to fix. (ECF No. 39 at 5–7.) Defendants assert that Plaintiff has acted in bad faith in such a way that warrants sanctions. (ECF No. 39 at 11.) Finally, Defendants request the Court to stay discovery. (ECF No. 31 at 3.) The Court first addresses Defendants' contentions as

to subject matter jurisdiction and subsequently addresses the issues concerning sanctions and stay of discovery.

### A. Subject Matter Jurisdiction

As part of the Civil Rights Act, the ADA only allows a plaintiff to seek injunctive relief and attorney's fees. 42 U.S.C. § 12188(a)(1); *see Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968). Consequently, "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a Plaintiff's ADA claim." *Oliver v. Ralph's Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). A defendant claiming that its voluntary compliance moots a case bears a formidable burden. *America Cargo Transport, Inc. v. U.S.*, 625 F.3d 1176, 1179 (9th Cir. 2010) (citing *Friends of the Earth, Inc.*, 528 U.S. at 190). Further, a plaintiff who alleges a suit under the ADA and establishes "standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability." *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008). Thus, a plaintiff's allegation of one statutory violation provides a basis for discovery into the potential existence of additional, unencountered violations. *Id.*

Both parties raise standing issues. Defendants trumpet two standing allegations: (1) they are now compliant with the ADA concerning all alleged barriers within Plaintiff's complaint and accordingly Plaintiff can no longer obtain injunctive relief; and (2) Plaintiff did not provide the Court with evidence as to how the newly discovered ADA violations affected his disability personally, and as a result, the newly discovered violations do not deny him full and equal enjoyment of the restaurant. (ECF No. 39 at 2.) Plaintiff responds that he has standing despite Defendants' renovations to the property, because Defendants "still have not remedied at least one of the original violations and there remain a number of additional violations." (ECF No. 35 at 3.) The Court will first address Plaintiff's allegations stated in his complaint, and subsequently the additional allegations within his expert's report.

6

*1. Plaintiff's ADA Allegations Within the Complaint*

Defendants base their claim—that Wong's Cuisine is free of all the barriers alleged in Plaintiff's Complaint—on Mr. Rod Thayer's declaration. (ECF No. 39 at 5–6.) Mr. Thayer's declaration claims that he remedied all of the elements identified in Plaintiff's complaint including: the elements within the men's restroom, the transaction counter, and the entryway. (ECF No. 33 at 3–4.) Accordingly, Defendants contend that Plaintiff can no longer obtain injunctive relief, and thus he does not have standing. (ECF No. 39 at 2.) In response, Plaintiff agrees that Defendants have remedied the barriers within the men's restroom and the front entryway. (ECF No. 35-2 at 2.) However, Plaintiff alleges that the transaction counter is still noncompliant, because the newly added counter section does not conform to section 904.4 of the 2010 ADA standards, which states "the accessible portion of the counter must extend the same depth as the sales or service counter top." (ECF No. 35 at 5); 2010 ADAAG § 904.4. In their reply, Defendants contend that the counter section added by Mr. Thayer complied with the 1991 ADAAG standards, which applies to Wong's Cuisine as an existing unaltered facility. (ECF No. 39 at 4.) Nevertheless, pursuant to Plaintiff's assertions that the countertop was not in compliance, Defendants changed the counter to comply with the 2010 ADAAG guidelines by modifying it into one solid counter that is 36 inches wide and 30 and 3/4 inches tall. (ECF No. 39 at 4–5.) Thus, it appears that the matters within the original complaint have been resolved. However, because Plaintiff has alleged that various other violations exist, the Court finds that Plaintiff should be allowed to amend the complaint.

*2. Plaintiff's Subsequent ADA Allegations*

Plaintiff has alleged that upon re-inspection of the property additional ADA violations have been discovered. (ECF No. 35 at 5–6.) Defendants assert that Plaintiff's ADA claims made in his response are insufficient, because they do not show how the alleged barriers "affect his disability so as to deny him full and equal access to enjoy the facility as required to establish his Article III standing pursuant to *Chapman v. Pier 1 Imports*, 631 F.3d 939 (9th Cir. 2011)." (ECF No. 39 at 2.) Plaintiff alleges in his response that Defendants and the Court were informed in the Rule 26 Conference and the Joint Report that Plaintiff intended to amend his complaint to include

7

additional violations:

> **Plaintiff:** Plaintiff intends to conduct an expert led site inspection to identify each barrier that would affect his type of disability and, then, amend the complaint to ensure that the ADA claim reflects his intention to have all unlawful barrier removed or remediated. This is the two-step process permitted and required by *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 and *Chapman v. Pier 1 Imports (US) Inc.*, 631 F.3d 939 (9th Cir. 2011).

(ECF No. 35 at 4.) Conforming to the Joint Report, Plaintiff conducted an expert led site inspection through attorney Anthony Goldsmith, who provided a report with additional ADA barriers that he observed during his inspection of Wong's Cuisine. (ECF No. 35-2 at 3–4.) While Mr. Goldsmith's report does not allege that each barrier affects Plaintiff's individual disability or denies him full and equal enjoyment of Wong's Cuisine, the report is in line with what the parties agreed to within their Joint Report. (ECF No. 9 at 4.)

Plaintiff alleges that when he sent his expert to conduct a site inspection of the restaurant, the expert reported that additional ADA violations exist, including: (1) the pedestrian path of travel surrounding the shopping center's boundary is inaccessible due to cross slopes in excess of 2.08%; (2) one of the four handicapped parking spaces is inaccessible due to its' slope reaching 6.2%; and (3) the pedestrian route from the public right of way is inaccessible due to a cross slope of 14.6%. (ECF No. 35-2 at 3–4.) Based on the alleged violations, it would be premature to dismiss Plaintiff's complaint without at least offering Plaintiff the opportunity to amend his complaint.[1]

Defendants contend that this Court lacks jurisdiction even considering Plaintiff's additional alleged violations because: (1) the parking space is now in compliance with the 2010 ADA standards and consequently Plaintiff no longer has standing as to this claim (ECF No. 39 at 5–6); and (2) fixing the cross-slopes in the sidewalks surrounding the shopping mall and the "curb ramp at the site boundary" are not readily achievable as a matter of law (ECF No. 39 at 7). Defendants attach exhibits to support these contentions including photographs of each alleged

---

[1] However, the Court cautions Plaintiff that any attempt in the future to introduce new architectural barriers must be included in a properly noticed motion, in accordance with Federal Rules of Civil Procedure and Local Rules, not through an expert report. *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908–09 (9th Cir. 2011) (pursuant to Rule 8, generally only disclosures of ADA related barriers "in a properly pleaded complaint can provide [a defendant] notice").

barrier, a state court case granting the defendant a summary judgment motion based on the removal of the barrier not being readily achievable, and a contractor's bid showing the time, cost, and supplies that are needed to complete the project. (ECF No. 39 at 5–50.) The Court declines to address the parking space issue because Plaintiff can omit any alleged barriers that Defendants have altered to comply with the ADA when he files his amended complaint. Regarding Defendants second argument, determining whether an action is readily achievable is a "fact intensive inquiry that will rarely be decided on summary judgment." *Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006); *see also* 42 U.S.C.A. § 12181(9) (to determine whether a barrier is readily achievable, courts consider factors including: the nature and cost of the action; the financial resources of the facility; the financial resources of the covered entity; and the type of operations of the covered entity). Because the inquiry into whether a barrier is 'readily achievable' is broad, multi-factored, and factually intensive, the Court cannot make a finding as to this argument.

Therefore, Defendants' request to dismiss Plaintiff's claims for lack of subject matter jurisdiction is DENIED, and Plaintiff is GRANTED leave to amend his complaint.

B. Sanctions and Request for Stay

Defendants also filed a Motion for Order to Show Cause against Plaintiff and his counsel to show why they should not be sanctioned.[2] (ECF No. 39 at 11.) Defendants contend that Plaintiff continues to litigate in bad faith, "knowing that Defendants swore under oath to make the changes." (ECF No. 39 at 11.) Defendants claim they "sent proof [to Plaintiff] under penalty of perjury to make the changes, did make the changes, and Plaintiff then propounded significant discovery, and two deposition notices." (ECF No. 39 at 11.) Additionally, Defendants ask the Court to stay discovery "for Plaintiff to verify the lack of barriers." (ECF No. 31 at 7.)

The Court has inherent power to levy sanctions against parties and their lawyers for actions made in bad faith or conduct tantamount to bad faith. *Fink v. Gomez*, 239 F.3d 989, 991

---

[2] In their request for reconsideration, Defendants initially stated that they are not seeking sanctions against Plaintiff. (ECF No. 31 at 4.) However, in their most recent Reply, Defendants ask the Court to issue an Order to Show Cause as to why Plaintiff should not be sanctioned. (ECF No. 39 at 11.) Thus, the Court assumes that Defendants are in fact asking the Court to impose sanctions upon Plaintiff.

(9th Cir. 2001). In order to find bad faith, a district court must point to specific facts that support such a finding. *In re Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir.1996). Here, after carefully considering the parties' briefing, the Court cannot conclude that Plaintiff acted in bad faith. Although Defendants represented to Plaintiff that they would make changes to each barrier to comply with the ADA, Plaintiff was not required to assume that Defendants would correct the barriers based on their representations. In fact, after Plaintiff's expert investigated the restaurant to determine whether Defendants did make the changes, the expert reported that one of the barriers, the transaction counter, was still not in compliance with the 2010 ADA standards. (ECF No. 35 at 5.) The Court recognizes Defendants' diligent work to correct the alleged barriers and their attempts to settle with Plaintiff. (ECF No. 39 at 3.) However, these actions do not support a finding that Plaintiff acted in bad faith or engaged in conduct amounting to bad faith. Thus, the Court turns to Defendants' request for a stay.

Essentially, Defendants are asking the Court to stay the instant matter because they are amenable to settling with Plaintiff outside of court and wish to avoid "unnecessary attorneys' fees and expenses." (ECF No. 31 at 2.) In support of this contention, Defendants provided the Court with emails they sent to Plaintiff's counsel, offering a settlement proposal. (ECF No. 32 at 18.) In response to Defendants' proposal, "Plaintiff propounded massive discovery and two deposition notices, one for the landlord and one for the tenant."[3] (ECF No. 39 at 3.) Additionally, Defendants contend a stay of discovery is necessary because "[i]t is a waste of judicial resources, time and money for the parties to litigate this action where it could be dismissed for Plaintiff's lack of standing and lack of subject matter jurisdiction." (ECF No. 31 at 3.) In response, Plaintiff merely mentions Defendants' request to stay discovery in his reply, but does not claim that a stay is inappropriate. (ECF No. 35 at 5.)

The Court is vested with broad discretion to manage discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). A stay of discovery pending resolution of potentially dispositive issues furthers the goal of efficiency for the courts and the litigants. *Little v. City of Seattle*, 863

---

[3] Defendants' counsel swore in a declaration that three days after sending Plaintiff a FRCP 68 offer, her firm received "seven . . . discovery requests with ninety . . . separate requests and depositions." (ECF No. 39-2 at 2.) In addition, Plaintiff served 24 requests for admissions. (ECF No. 39-2 at 2.)

F.2d 681, 685 (9th Cir. 1988).  Motions to stay discovery may be granted upon a showing of good cause by the moving party or where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *See* Fed. R. Civ. P. 26(c)(4); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 285–86 (S.D. Cal. 2000).  A district court's decision to allow or deny discovery is reviewable only for abuse of discretion.  *Munoz-Santana v. INS*, 742 F.2d 561, 562 (9th Cir. 1984).  Courts have applied their discretionary authority to grant stays because it appeared that settlement discussions between the parties might prove fruitful.  *EEOC v. Canadian Indemnity Co.*, 407 F. Supp. 1366, 1368 (C.D. Cal. 1976).  "A stay would allow the court to postpone decision-making pending other action that will resolve at least some . . . of the issues in the case."  *Sanford v. Capital City Restaurants, Inc.*, No. No. 05-0519, 2006 WL 5003842, at *1 n.1 (E.D. Cal. 2006).

  Here, after Plaintiff sent his expert to investigate the restaurant, Defendants modified the transaction counter, repaved the handicap parking space that Plaintiff alleged was too steep, and accepted a bid proposal to determine the potential cost of repaving the sidewalk surrounding the shopping center.  (ECF No. 39 at 5–11.)  Consequently, the Court notes that Plaintiff now has the opportunity to send an expert to the restaurant to re-inspect the barriers to confirm or refute Defendants' alleged changes and possibly resolve some of the issues.  Staying discovery in the meantime will help expedite this prospect.  Furthermore, based on Defendants' briefing, it appears that Defendants are agreeable to resolving this dispute without the need for additional judicial intervention.  Therefore, to facilitate the settlement process, the Court refers the instant action to the Court's Alternative Dispute Resolution (ADR) Division for scheduling of a settlement conference before a magistrate judge.

### V.   CONCLUSION

  Therefore, for the reasons set forth above, the Court orders as follows:

1. Defendants' request to dismiss Plaintiff's claims through an order to show cause is DENIED;
2. Defendants' request to impose sanctions on Plaintiff is DENIED;
3. Defendants' request to stay discovery is GRANTED; and

4. The Court refers this matter to ADR for scheduling of a settlement conference before a magistrate judge. The magistrate judge shall then issue an order setting the settlement conference. Counsel is instructed to have a principal with full settlement authority present at the settlement conference. If the case does not settle, the parties are ordered to file a joint status report not later than seven (7) days after the conclusion of the settlement conference

IT IS SO ORDERED

Dated: April 28, 2016

Troy L. Nunley
United States District Judge